MONTGOMERY v. ARKANSAS COLD STORAGE & ICE COMPANY.

Opinion delivered January 10, 1910.

1. TRIAL—DIRECTING VERDICT.—In testing the correctness of a peremptory verdict given by the court the testimony should be viewed in the light most favorable to appellants. (Page 194.)

2. EVIDENCE—PAROL EVIDENCE TO EXPLAIN WRITING.—Where a written contract for the storage of apples provided that it was subject to all rules and regulations governing the storage of apples, but was silent as to what such rules and regulations were, parol evidence was admissible to show what those rules and regulations were. (Page 194.)

3. SAME—AMBIGUOUS WRITTEN CONTRACT—PAROL EVIDENCE.—Where a written contract is ambiguous on its face, parol evidence is admissible to explain it. (Page 194.)

4. WAREHOUSEMEN—CONTRACT OF STORAGE—MEASURE OF DAMAGES.—Upon breach of a contract for the storage of apples in a cold storage warehouse the owners of the apples could not augment their damages by allowing them to remain out of cold storage because the warehouseman wrongfully demanded additional charges for keeping the apples; the measure of damages in such case being the additional amount which the warehouseman demanded for keeping them. (Page 195.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed on remittitur.

*McDaniel & Dinsmore,* for appellants.

1. The issues should have been submitted to the jury. 80 Ark. 194; 82 *Id.* 86; 73 *Id.* 568.

2. The testimony of witnesses Payne and Swan, in support of appellants' counterclaim, was admissible to show the agreement of the parties. The written order being silent, parol evidence was clearly admissible to show fully the agreement of the parties. 9 Cyc. of Ev. p. 350; 27 Ark. 510; 55 *Id.* 353; 81 *Id.* 389. Parol evidence was also admissible to show the agreements made by the agents of appellee as an inducement to the signing of the written order, which constitutes the contract in this case. 100

N. C. 178; 6 Am. St. 577; 32 Am. St. 436; 55 Ark. 112; 17 Cyc. 717.

3.   The written order stipulates that all space contracted for is subject to all the rules and regulations of appellee. It is not shown that any rule or regulation against the making of such a contract as appellants' witnesses testify to was ever brought to the notice of appellants. They therefore had the right to assume that agreement and understanding had with its manager was not inconsistent with its rules and regulations, and it is bound by such contract.

*Walker & Walker*, for appellees.

The construction of the contract was for the court, not the jury.   11 A. & E. Enc. Law, 241; 89 Cal. 327; 44 N. J. L. 331. The effect of the testimony offered by defendants was, not to show anything in the rules and regulations of plaintiff company to sustain his contention, but to establish an entirely separate, different and distinct contract, and one contrary to the rules and regulations of the company.   Appellants' contention as to this point is therefore absurd.   The testimony offered in support of defendants' counterclaim was inadmissible, it being inconsistent with the terms of the written contract.   141 U. S. 510; 71 Fed. 477; 29 Fed. 260; 9 Enc. Ev. 347.

McCULLOCH, C. J.   Appellee operated a cold storage plant at the city of Fayetteville during the season of 1907 and 1908, and sued appellants in the circuit court of Washington County for a balance alleged to be due on a contract for the storage of apples, as follows:

"Fayetteville, Ark., August 31, 1907.
"Arkansas Cold Storage & Ice Co.,

"Gentlemen:   Please reserve for me space in your storage for 2,800 standard size barrels of apples, for which I hereby contract for and agree to pay you for said reservation the sum of $0.50 per barrel for the above stated number of barrels, subject to all your rules and regulations governing the storage of apples.

"Montgomery & Co., -
"Swan."

"Accepted, Ark Cold Storage & Ice Co.,
"By W. S. Nettleship, Genl. Mgr."

Appellants pleaded as a defense and counterclaim that "their agents, W. E. Payne and J. H. Swan, applied to W. S. Nettleship, the general manager, to store about 3,000 barrels of apples, and at the time fully explained to said general manager of plaintiff the manner in which defendants intended to use and utilize said space in said storage; explained to him that defendants were apple dealers, engaged in buying and selling fruit, and that, after storing apples in the space so leased, they would expect from time to time, as they sold and removed apples from the space so leased, to refill the space, during the storage season, with other apples. That, after so disclosing to plaintiff's general manager the manner in which the space applied for would be used, the said manager assented to such use of said space, and assured defendant's said agents that plaintiff would not object to such use of such space by defendants, and that, if defendants contracted for said space, they would have the right to refill the same with other apples as often as they might make shipments of fruit from said room. That they, said defendants, contracted for said cold storage, and stored therein from 2,800 to 3,000 barrels of apples, and signed the written order set forth in the complaint, in reliance upon the assurance of plaintiff's agent and manager that defendants would have the right to refill with apples the space so leased, from time to time during the storage season, as sales and shipments might be made therefrom. That, in reliance upon such assurance of plaintiff, they purchased and had in dry storage other apples which were well preserved up to a date long subsequent to the time when sufficient shipments of their apples in cold storage had been made, so as to admit other apples so held by them outside said cold storage. That plaintiff refused to permit defendants to refill such space with other apples. That defendants had on hand, outside of said cold storage, about 722 barrels of apples which they could and would have placed in the space so leased from plaintiff in cold storage, if permitted by plaintiff to do so; that, after being denied by plaintiff the right to refill in said cold storage so leased, the apples so held by them in dry storage, without fault on their part, greatly deteriorated, whereby defendants were damaged in the loss of apples by decay and in the inferior quality of those thereafter placed upon the market in the aggregate sum of $1,277.30."

The jury returned a verdict in favor of appellee on peremptory instruction of the court for the full amount claimed. Judgment was rendered on the verdict, and·appeal was taken to this court.

In testing the correctness of the peremptory instruction given by the court, we must of course view the testimony in its strongest light most favorable to appellants, for, if they introduced testimony sufficient to warrant a verdict in their favor, the case should have been submitted to the jury. They introduced their two agents, Payne and Swan, who executed the contract for them, and the testimony of both these witnesses tended to establish every allegation of the defense and counterclaim. We are of the opinion that the issue of fact should have been submitted to the jury with appropriate instructions.

The meaning of the written contract is not altogether clear, whether so much space was rented for storage purposes, or whether merely the given number of barrels was to be stored. If the former be the correct interpretation, then of course appellants had the right to refill the space when barrels were removed, subject to established rules and regulations. But, be that as it may, the written contract is silent as to what the rules and regulations were, and it was necessary to resort to evidence *aliunde* to ascertain what they were. The evidence introduced by appellee shows that there were printed rules and regulations, but none on the question at issue. The most that is shown with respect to the practice of allowing customers to refill space is that instructions were given to the manager of the plant. There being no established rule or regulation on this subject which was brought to the attention of appellants when they entered into the contract in question, the statement and verbal agreement of the manager who executed the contract for appellee had the effect of establishing a regulation governing the performance of this contract. The manager was clothed with power to execute a contract. He was a general agent, and in contracting with appellants he stood in the place of his principal, and the latter cannot be permitted to deny appellants the privileges which were held out to them as an inducement to enter into the contract. The written contract is neither varied nor contradicted by the parol testimony showing what was held out to them as the regulation governing the performance of the contract. The testimony merely makes certain

that which the face of the contract leaves uncertain as to what the intention of the contracting parties was. *McCarthy* v. *McArthur,* 69 Ark. 313.

We do not, of course, undertake to decide what the facts of the case were, but there was sufficient evidence introduced by appellants to warrant a submission of the case to the jury.

Appellants were not, however, entitled to recover on their counterclaim, or as a defense to reduce appellee's claim, more than the price for storing the 722 barrels of apples which appellee refused to allow refilled into the storage place. Appellants could not augment their damage by allowing the apples to remain out of cold storage because appellee wrongfully refused to permit them to put them in cold storage without further charge. This charge for cold storage amounted to $361; and if the jury had found in favor of appellant, they would have been entitled to that much and no more.

If appellee will, within 15 days, remit this much of the amount recovered, the judgment will be affirmed; otherwise it will be reversed, and the case remanded for new trial.