## LA FAYETTE v. LA FAYETTE.

No. 5726—Opinion Filed May 1, 1917.

Rehearing Denied June 19, 1917.

(166 Pac. 169.)

(Syllabus by the Court.)

1. **Partnership — Dissolution Agreements— Intent.**

Where parties entered into a contract to dissolve a partnership existing between them, it was the duty of the court in construing said contract to ascertain the intention of the parties from the writing itself if possible, and to so interpret the words thereof as to give effect to the mutual intention of the parties thereto as it existed at the time of entering into the agreement, so far as such intention was ascertainable and lawful.

2. **Contracts — Construction — Surrounding Circumstances.**

Where the intention of the parties to a contract could not be ascertained from the writing itself, under the law in force in the Indian Territory at the time the contract was executed, the court was authorized to look to the situation of the parties thereto when the contract was made, its subject-matter and purpose in order to determine therefrom the intention of the parties and the meaning of the terms used in the agreement.

3. **Evidence—Parol Evidence Rule—Contracts.**

Plaintiff and defendant, who were engaged in the mercantile business as partners, entered into a contract of dissolution, whereby plaintiff retired from the partnership and transferred his entire interest in the business to defendant. The contract expressly stipulated that defendant should assume and pay the liabilities, and should sell certain cotton and divide the proceeds, and should collect certain accounts and divide the proceeds equally. Certain valuations were placed upon the assets by the partners, and plaintiff contended that it was the intention that defendant, after paying the indebtedness of the partnership, should pay plaintiff one-half of the value of the assets as shown by said valuations, while defendant contended that said valuations were merely descriptive. The contract contained no provision requiring defendant to pay plaintiff one-half the value of the assets in addition to the other considerations recited therein.

Held, that it was not error to admit parol evidence to determine the intention of the parties.

Kane, J., dissenting.

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Suit by Mose W. La Fayette against Ben F. La Fayette. There was a judgment denying the relief sought, and the plaintiff brings error, and defendant assigns cross-errors. Affirmed.

William T. Hutchings, for plaintiff in error.

Thomas H. Owen and Joseph C. Stone, for defendant in error.

HARDY, J. This was a suit for an accounting, commenced by Mose W. La Fayette, the plaintiff in error, plaintiff below, against the defendant in error, defendant below. Hereafter the parties will be designated "plaintiff" and "defendant" as they appeared in the trial court. Upon trial the parties, who are brothers, and had been associated in the general mercantile business as partners for a great many years, presented evidence for the purpose of establishing their mutual claims against each other, and the trial court, after hearing the same and making findings of fact and conclusions of law therefrom, found the plaintiff, Mose W. La Fayette, to be indebted to the defendant, Ben F. La Fayette, in the sum of $7,364.39, and entered judgment accordingly. Thereupon the plaintiff commenced this proceeding

in error for the purpose of reviewing the action of the trial court, contending that the findings and judgment of the trial court should have been in his favor for something like $15,000 or $16,000. As there is no dispute over any important principle of law, the correctness of the conclusion reached by the trial court turning upon the construction to be given a certain contract of dissolution entered into between the parties on the 9th day of January, 1901, we will not attempt to make a detailed statement of the facts of the case, but will content ourselves with a discussion of the specific points of disagreement between the parties. The contract of dissolution reads as follows:

"Ind. Ter., Northern Dist.

"Checotah, I. T., January 9, 1901.

"This agreement entered into this 9th day of January, 1901, at Checotah, I. T., by and between Ben F. La Fayette and Mose W. La Fayette, members of the firm of La Fayette & Bro., doing business as general merchants at Checotah, I. T., witnesseth: By mutual consent the copartnership existing between the said Ben F. La Fayette and Mose W. La Fayette has this day been dissolved, the said Mose W. La Fayette retiring and transferring to the said Ben F. La Fayette his entire interest in the business of La Fayette & Bro. By mutual agreement, valuations have been set upon the property common to and belonging to the business as follows:

| | | |
|---|---:|---:|
| Merchandise per inventory | $ 29,834 | 54 |
| Cattle account per inventory | 674 | 50 |
| Live stock, wagons and harness | 894 | 00 |
| Corn | 400 | 00 |
| Oil gin machinery | 550 | 00 |
| Cotton seed | 1,650 | 00 |
| Mulberry and oak posts | 35 | 10 |
| Coal at gin | 48 | 00 |
| T. J. Whisenhunt farm | 700 | 00 |
| Balance deposited in Fourth National Bank | 265 | 76 |
| Balance deposited in Lawrence County Bank | 783 | 12 |
| Balance deposited in National Bank of Commerce | 9,099 | 92 |
| Cash on hand | 1,180 | 75 |
| Store buildings, including general store, hardware building and ground occupied by blacksmith shop and photo building | 6,296 | 13 |
| Insurance unexpired | 586 | 80 |
| Fire engine, engine house, hose, etc. | 900 | 00 |
| Gentry avenue houses, Nos. 1, 2 3, 4, and lots | 1,965 | 04 |
| Blacksmith shop (building only) | 200 | 00 |
| Photo gallery building at cost of house only | 624 | 84 |
| Brush Hill gin | 50 | 00 |
| Office and store furniture and fixtures | 1,026 | 45 |
| Water tank in front of store | 60 | 00 |
| House and lot known as Foley House | 300 | 00 |
| House and lot known as Oman House | 700 | 00 |
| Current account M. W. La Fayette | 16,634 | 64 |
| Current account Ben F. La Fayette | 2,764 | 37 |
| Accounts per list in customers ledger No. 11 | 27,048 | 44 |
| Accounts per list in petit ledger | 11,407 | 82 |
| Gin property consisting of gin building, cotton seed house, engine, all machinery, scales, scale house, barn, lumber yard, and all ground occupied by same, together with tanks and land on which located | 5,000 | 00 |
| | $121,679 | 21 |

"The following liabilities are recognized and assumed by the said Ben F. La Fayette:

| | | |
|---|---:|---:|
| Creek tax | $ 65 | 00 |
| Accounts payable | 21,161 | 82 |
| Bills payable | 11,461 | 07 |
| Deposits | 4,715 | 81 |
| Due bills | 4,879 | 16 |
| | $ 42,282 | 86 |

"It is further agreed that the amount of accounts and notes in customers ledger and petit ledger amounting to $38,456.26 shall be left in the hands of the said Ben F. La Fayette for collection, and when collected the proceeds of same shall be equally divided. It is further considered and agreed that one hundred and ninety (190) bales of cotton on hand at this date is not included in list of assets, and that when sold the net proceeds of same shall be equally divided. It is further agreed that the said 190 bales of cotton shall be consigned to Adler-Goldman Co., St. Louis, Mo., to be sold to best interest of consignors.

"As a further consideration to the foregoing articles it is mutually agreed to by the said Ben F. La Fayette and Mose W. La Fayette that sundry personal accounts that have not been considered of value and have been listed for the purpose of recording in a suspense ledger amounting to $20,834.70 shall be also left in the hands of the said Ben F. La Fayette, and the net proceeds of any such accounts as may be collected shall be divided equally.

"[Signed]      Ben F. La Fayette

           "Mose W. La Fayette.

"Witness: J. Nelson."

The trial court found that:

"By their dissolution agreement of January 9, 1901, it was intended by the plaintiff and the defendant that the plaintiff should sell and the defendant should buy and acquire the entire interest of the plaintiff in the business of La Fayette & Bro., and all the assets thereto belonging, including the current account of the plaintiff in the sum of $16 634.64, and that in consideration therefor the defendant should pay the firm's debts, collect and divide in equal parts the accounts upon

the customers ledger, petit ledger and suspense ledger, and should sell the 190 bales of cotton and divide the proceeds thereof. It was not the intention of the parties that the defendant should take said property at the inventory value."

And as a conclusion of law:

"The court construes the contract of dissolution to mean, as regards the consideration for the sale and purchase of the interest of Mose W. La Fayette in the business, that Ben F. La Fayette should take the same and pay the liabilities of the firm; and that he should sell the cotton described in the agreement and divide the proceeds; and that he should collect, where possible, the accounts upon the customers ledger, petit ledger, and suspense ledger, and divide the proceeds with the plaintiff. But if the contract of dissolution is ambiguous upon the question of consideration, which the court does not concede, the same result must be reached because it appears from the evidence that such was the intent of the parties."

The plaintiff contends that the court was wrong, and that it was the intention of the parties as disclosed by the terms of the contract that plaintiff, as retiring partner, should transfer to defendant his entire interests in the business, including its assets, for and in consideration of the valuation placed thereon by the parties to the agreement, except as limited by the other provisions of the contract, and that in consideration for the transfer of plaintiff's interest, the defendant agreed to pay the debts of the firm and pay to plaintiff one-half of what remained thereafter. In construing the contract, for the purpose of determining between these contending claims, it was the duty of the court to ascertain the intention of the parties from the writing itself if possible (Rev. Laws 1910. sec. 949), and to so interpret the words of the contract as to give effect to the mutual intention of the parties thereto as it existed at the time of entering into the agreement, so far as such intention is ascertainable and lawful (section 946). 2 Elliott, Contracts, sec. 1506. Upon examining the contract we find that the parties intended to dissolve the partnership theretofore existing, and that plaintiff should retire and transfer his entire interests in the business to defendant, and that as a consideration therefor defendant agreed: (1) To pay all outstanding indebtedness of the partnership; (2) to collect the accounts and notes in customers ledger and petit ledger, and divide the proceeds equally between himself and plaintiff; (3) to sell 190 bales of cotton and divide the net proceeds equally; (4) to collect accounts on the suspense ledger and divide the net proceeds equally. No other consideration is recited in the written instrument,

and in order to show that an additional consideration was to be paid, it was necessary to make this fact appear by parol evidence. The trial court was inclined to the view that the written recitals were sufficient to show that no consideration other than those recited was intended to be paid, but being in doubt as to whether the contract was sufficiently clear upon this point, permitted the introduction of oral evidence for the purpose of enabling him to arrive at the true intention of the parties. In this there was no error.

The contract was executed in the Indian Territory prior to statehood, and under the law in force in that jurisdiction the court was authorized to look to the situation of the parties thereto when the contract was made, its subject-matter and its purpose, all of which were material and valuable in enabling the court to determine the intention of the parties when entering into said contract and to arrive at the meaning of the terms used therein. Fox et al. v. Tyler et al., 109 Fed. 258, 48 C. C. A. 356.

It appears from the evidence that plaintiff and defendant started in business in Missouri in the year 1883, and continued in business there until 1887, when they moved to Ft. Gibson, Ind. T. In 1890 they moved their business to Checotah, at which time much of their stock consisted of old goods. They were engaged in the general mercantile business, the best part of their stock consisting of hardware, which was sold soon after the dissolution at 65 per cent. of the inventory price, the sale being made by plaintiff himself. The evidence on behalf of defendant showed that plaintiff was dissatisfied with the business, and was desirous of severing his connection therewith; that the stock of merchandise was not worth over 50 per cent. of its inventory price; and that the valuations placed upon the assets were carried on the books from year to year without change, in order to give the partners a good rating with wholesale houses.

During the year 1907 plaintiff went to defendant and asked him what construction he placed upon the contract, and apparently acquiesced in the construction placed thereon by defendant. Plaintiff's petition sought an accounting for the amounts collected on the accounts heretofore mentioned, but did not seek to charge defendant with the listed valuations of the various items of assets which were transferred to him at the time of the dissolution. The contract is silent as to the reason for placing a valuation upon the assets. Defendant answers plaintiff's contention by saying that said valuations were descriptive of the items so listed.

The accounts on the customers and petit ledgers were so listed, yet it is not contended that the valuations placed thereon were intended as a basis to measure defendant's liability. If plaintiff's contention be true, then upon the dissolution defendant became indebted to him for one-half of the listed valuations of the assets transferred, less the indebtedness of the firm and the accounts concerning which special provision was made, and this sum, which was easily ascertainable and could be arrived at by a simple calculation, was due or would be payable upon demand. At no time did plaintiff, prior to the filing of this suit, make any claim or demand that said sum was due and owing to him, and it is a significant fact that while plaintiff for four years or more after the dissolution had the active management and control of the defendant's business under an agreement with the creditors, and had charge of the books of the business, it does not appear that an account was kept in which defendant was charged with said sum or credited with any amounts paid thereon. The construction which the parties themselves have placed upon the contract and their action thereunder before any controversy arose between them as to its meaning, with knowledge of its terms, is entitled to great weight and will, when reasonable, be adopted and enforced by the courts. Bearman v. Dux Oil Co., 64 Oklahoma, 166 Pac. 199; Rider v. Morgan, 31 Okla. 98, 119 Pac. 958; American Soda Fountain Co. v. Gerrer's Bakery, 14 Okla. 258, 78 Pac. 115, 2 Ann. Cas. 318; Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 27 Okla. 180, 111 Pac. 326; Wiebener v. Peoples, 44 Okla. 32, 142 Pac. 1036, Ann. Cas. 1916E, 748; 2 Elliott, Cont. sec. 1538.

The contract contained no stipulation which required the payment of one-half the listed valuation of the property, less the indebtedness and accounts, and the admission of the evidence to clear up this point did not violate the rule which prohibits the admission of parol evidence to vary or contradict the terms of a written instrument, but came within the rule which permits such evidence for the purpose of making certain that which from the face of the contract was left uncertain. Holmes v. Evans, 29 Okla. 373, 118 Pac. 144; Montgomery v. Arkansas Ice Co., 93 Ark. 191, 124 S. W. 768; Howell v. Denton (Tex. Civ. App.) 68 S. W. 1002; Bell v. Wiltson, 5 Neb. Unof. 486, 98 N. W. 1049. The contract being silent as to the payment of any consideration other than those already enumerated, when plaintiff points to the contract and says that it contains the entire agreement of the parties, his contention as to additional consideration must fail

because no provision is contained therefor in the written instrument. Under the other rule which permits the admission of parol evidence to show whether such consideration was in fact intended and agreed upon, the court heard the evidence and found therefrom that no such consideration was intended nor agreed to be paid, and the evidence upon this point is sufficient to support the findings thereon.

As to the personal account of plaintiff, it is contended by him that he should be charged with the balance due after deducting from the amount of his account the amount owed by defendant to the partnership, while defendant contends that plaintiff should be charged (and the court so found) with the total amount charged against him upon the books at the time of the dissolution. A similar question was involved in Gilliam v. Newland, 37 Okla. 36, 130 Pac. 133, where plaintiff and defendant had been partners in the grocery business and the plaintiff had sold his interest to defendant and brought suit to recover the purchase price agreed upon. At the time of the dissolution, plaintiff had overdrawn about $1,400, while defendant's account was overdrawn about $700. The actual merchandise involved about $1,400, and plaintiff sued to recover one-half of the invoice price, claiming that defendant had agreed to pay him that amount for his interest in the business. The defendant claimed that the agreement was that he should collect the accounts receivable, and pay the accounts payable, and give the plaintiff the benefit of any surplus, or charge him with the burden of any deficit. The testimony was conflicting, and there being facts and circumstances tending to support the theories of both parties, it was held that the whole issue should be submitted to the jury. Here the written contract expressly listed the accounts of plaintiff at the amount shown on the books of the partnership, and it was expressly agreed that plaintiff should retire and transfer to defendant his entire interest in the business, including the assets listed, among which was plaintiff's account. Prior to the dissolution plaintiff as an equal partner in the business had an undivided one-half interest both in his own account and in that of defendant, and when he retired and each of said accounts was listed at the full amount thereof as a part of the assets of the business, and he agreed to transfer his entire interest therein to defendant, he thereby agreed that defendant should become the sole owner of and be entitled to collect said account in full.

What we have said concerning the claim of plaintiff as to the construction of the con-

tract applies with equal force to the errors assigned in defendant's cross-petition in error. When the court permitted evidence to be introduced and determined therefrom that it was the intention of the parties that defendant should, as one of the considerations for the contract of dissolution, collect the accounts and divide the proceeds, this finding disposes of the principal contention urged on the cross-appeal. The contract did not specifically declare whether the expenses should be borne by defendant separately or should be deducted from the proceeds of the collections, and in order to determine this uncertainty, the court was authorized to hear evidence from which to ascertain the intention in that respect, and, having done so, found that it was the intention of the parties that the expenses of such collection should be borne by defendant instead of being borne jointly by the parties. In so construing the contract, the court did not err.

As to the claim of defendant that interest should be charged upon the individual account of plaintiff to the partnership, we think the judgment of the court was right. The course of dealing between the parties, as disclosed by the record, is such that we could not fix any definite amount upon which interest should be paid or any date from which it should commence to run until the accounts of the parties had been adjusted as it was by the decree of the court. The presumption is that the judgment was right, and defendant in error assailing it in this regard has not shown us wherein it was wrong.

The judgment is therefore affirmed.

All the Justices concur, except KANE, J., who dissents, and OWEN, J., disqualified.