## AULT v. PAGE.

No. 9947—Opinion Filed June 14, 1921.

(Syllabus.)

**1. Compromise and Settlement—Validity—Settlement Between Partners.**

Where two parties, having engaged in business for several years as partners, agree upon a settlement of their business transactions and enter into a written contract of settlement wherein one of the partners to the settlement acknowledges an indebtedness in a certain amount to the other partner, such a contract of settlement is conclusive upon the parties in the absence of fraud or mistake clearly established by the party seeking to avoid the contract of settlement.

**2. Same—Action on Note—Defense—Demurrer to Evidence.**

In an action by plaintiff against defendant, as indorser upon a promissory note, where the defendant admitted the execution of the note, the transfer and indorsement thereof, but filed a counterclaim against the plaintiff alleging that the plaintiff was indebted to him in the sum of $30,000 by reason of the defendant having paid to the plaintiff $30,000 through mistake in settling with the plaintiff and accounting to him for the proceeds of the sale of certain oil properties sold by the defendant, part of the property sold being owned jointly by the plaintiff and defendant and in part by the defendant individually, and the evidence in the action disclosed that about two years after the sale of the properties by the defendant the plaintiff and the defendant entered into a written

contract of settlement in which the defendant acknowledged himself, on account of past transactions including the sale of the property, indebted to the plaintiff in the sum of $30,000, and the evidence showed that the contract was fairly entered into, and the defendant wholly failed to introduce any testimony tending to establish fraud or mistake in entering into the contract of settlement, and at the close of the testimony of the defendant attacking the contract of settlement a demurrer was filed to defendant's testimony—Held, that the trial court erred in overruling the plaintiff's demurrer to the defendant's testimony, and under the evidence as presented it was the duty of the trial court to sustain the demurrer of the plaintiff to the defendant's testimony and instruct the jury to return a verdict in favor of the plaintiff for the amount found to be due from the evidence.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by A. F. Ault against Chas. Page upon a promissory note. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

Biddison & Campbell, for plaintiff in error.

Stuart, Cruce & Riddle, for defendant in error.

KENNAMER, J. A. F. Ault, plaintiff in error, filed this action in the district court of Tulsa county in June, 1917, to recover the sum of $15,595.31 from Chas. Page, defendant in error, upon a promissory note executed on May 16, 1912, by Clifford B. Harmon, promising to pay to Chas. Page. six months after date, the sum of $13,125, with interest thereon. The plaintiff, Ault, claimed that the note, before maturity, had been sold and transferred to him by Chas. Page for a valuable consideration and he had indorsed said note to the plaintiff, and that by reason of the indorsement by the defendant, Page, upon said note he was liable to the plaintiff for the balance due upon the same. The defendant filed an amended answer and counterclaim, denying each and every allegation of the plaintiff's petition except such matters as were specifically admitted. Defendant admitted the execution of the note as pleaded, the transfer and indorsement, but denied that the same was for a valuable consideration. Defendant filed a cross-petition counterclaim, alleging that during the years 1908 and 1909, and for several years thereafter, the plaintiff and defendant were jointly interested in certain oil and gas leases and production thereon; that during the year 1911 the defendant negotiated a joint sale of certain properties owned by the defendant and plaintiff and properties owned by the defendant individually to certain parties in

New York for an aggregate sum of $1,000,-000; that the sale was based upon so much per barrel daily production; that long after said negotiation had been practically closed upon the basis herein set out the defendant found it necessary and was required to reduce the purchase price of the properties sold to the sum of $800,000, which was necessary in order to close said deal and collect the purchase price thereof; that the negotiation and sale of said properties covered a period of more than one year. Defendant alleged that the actual interest of the Omega Oil Company in the properties sold was a fraction over one-fourth; this being the properties in which the plaintiff owned an interest with the defendant and which were sold with other properties. Defendant alleges in the fifth paragraph of his cross-petition. that during all of said years herein mentioned he kept one bookkeeper, and that he undertook to carry all his business transactions in his mind and from time to time in most instances would verbally give the bookkeeper data from which to make up a record and keep his books. That the defendant never or seldom used any memorandum or written data of his business transactions, but made a practice of keeping the same in his head. The defendant in the sixth paragraph of his cross-petition alleged that during the time herein, and up until an audit of his books was made, he was not advised and did not know the relative percentage that each property going into the sale would bear to the other property and did not know and was not advised as to the actual percentage which the Omega Oil Company owned or to which it would be entitled out of the proceeds of said sale, and was under the impression and believed that its interest would be practically one-third of the full purchase price of said properties, and that it was his intention to allow the said plaintiff herein one-half of the net proceeds of the interests, or the amount which the said Omega Oil Company would receive from said sale. That before said sale was reduced to $800,000 he estimated that the interest of the Omega Oil Company on the basis of $900,000 for the aggregate of the purchase price of said properties would be $300,000, and that after said purchase price was reduced to $800,000 its interest would be approximately $266,-000, and assuming that the Omega Oil Company was entitled to practically a one-third interest in the proceeds of said properties, he directed his bookkeeper to give the plaintiff credit for one-half of the one-third interest, which as figured out by the bookkeeper would be $133,033. That this defendant at said time was in error and mistaken

as to the amount to which the Omega Oil Company was entitled; whereas, in truth and in fact, the said Omega Oil Company was entitled to a little less than one-fourth of the aggregate purchase price of said properties, and that the plaintiff's interest therein could not have exceeded the sum of $100,000.

In the eighth paragraph of the defendant's counterclaim it was alleged that on the 14th day of August, 1913, the plaintiff herein came to this defendant and requested him to sign an agreement or contract of settlement acknowledging the defendant to be indebted to the plaintiff in the sum of balance due of $30,000 upon said transaction relative to the oil and gas leases and the sale of the same as herein recited, and stating to this defendant at said time that according to a settlement rendered to him by the defendant's bookkeeper and according to the interest which this defendant had stated was due the Omega Oil Company, further stating that after allowing all the payments made thereon, there was still $30,000 due the plaintiff, and this defendant, believing and relying upon such belief, but without any actual knowledge or data as to the real facts, that the Omega Oil Company was entitled to practically a one-third interest in the proceeds of the sale of all of said properties, and having great confidence in the plaintiff and believing him to be a fair man who would not take advantage of this defendant, and relying uppon his statements, under a misapprehension of the real facts. signed said agreement acknowledging his indebtedness to said plaintiff of a balance due in the sum of $30,000, whereas, in truth and in fact plaintiff was laboring under an erroneous impression or an erroneous assumption of facts as to the interest of the Omega Oil Company in the proceeds of said sale, in that the interest of said company was a little less than a one-fourth interest instead of a one-third interest, and, whereas, this defendant had made an error and mistake in directing his bookkeeper to give the Omega Oil Company credit for a one-third interest and the plaintiff credit for one-half the one-third interest, and, whereas, this defendant was misled by the plaintiff's statements, which were misleading and untrue; and, whereas, at said time this defendant was not indebted to the said plaintiff in the sum of $30,000 as stated, but only in the sum not to exceed the amount of $1,972.79; all of which facts this defendant believes that plaintiff at this time well knew, but that said plaintiff, as this defendant believes and charges to be true, knowing that said defendant was not indebted to said plaintiff in said

sum of $30,000, caused said agreement of settlement to be prepared and written for the purpose of inducing this defendant to sign the same, thereby having him acknowledge in writing that he was indebted to said plaintiff in order to cheat and defraud said defendant out of said amount of $30,000.

Defendant alleged that he caused his books to be audited in the year 1914, and that the same showed that he had overpaid the plaintiff the sum of approximately $30,000, including the note sued on by the plaintiff, and that he mailed the plaintiff a copy of the result of said audit of his books, and that the plaintiff made no objection to the statement so mailed.

For his second defense and for an additional counterclaim the defendant alleged that he agreed with the plaintiff to allow him as his interest in the properties sold by him to the New York parties the sum of $100,000, which he estimated would be approximately the amount due the plaintiff after deducting all expenses, and that this agreement was made with the plaintiff subsequent to the time he had estimated and stated to the plaintiff that the Omega Oil Company's interest in the properties sold would amount to approximately one-third, and that he agreed to allow the plaintiff the sum of $100,000 out of the proceeds of the sale, without regard to the percetage which the properties of the Omega Oil Company would bear to the other properties sold, and that the plaintiff agreed to accept said amount and the same was entirely satisfactory with the plaintiff. That the defendant has paid the plaintiff more than $33,000 more than was due him and in excess of the amount which he agreed to let him have out of the sale of said properties. Wherefore, the defendant prayed the judgment of the court for the sum of $30,000 upon his counterclaim, with interest, and such other relief as the court deemed proper in the premises.

To the answer and cross-petition of the defendant the plaintiff filed a reply in which it was alleged that Clifford B. Harmon, who executed the note sued on in the plaintiff's petition, had prior to maturity thereof paid the same in full to the defendant and fully indemnified him as an indorser thereon against any loss by such indorsement, denying each and every allegation contained in defendant's answer and counterclaim not specifically admitted. In the third paragraph of the plaintiff's reply he alleged that on the 14th day of August, 1913, plaintiff and defendant made a written agreement,

signed and executed by both parties, whereby plaintiff and defendant settled certain affairs between them, including the properties sold of the Omega' Oil Company, attaching a copy of the agreement to the reply. In the fourth paragraph of the reply plaintiff pleaded the statute of limitations as to the cause of action set out in the cross-petition and counterclaim not arising on contract for relief on the ground of fraud, for the reason it did not accrue within two years prior to the filing of said cross-petition and counterclaim.

The cause was tried to a jury, which resulted in a verdict for the defendant, and judgment was entered in accordance with the verdict. The plaintiff prosecutes this appeal and presents 20 assignments of error as grounds for a reversal of the judgment.

Upon a careful examination of the records in this cause we are convinced that the decisive question is raised by the 19th assignment of error, "That the court erred in overruling the plaintiff's demurrer to the defendant's evidence," and to this assignment of error we shall first give our attention. The decisive question in this controversy revolves around the one proposition as to what amount of money was due the plaintiff, Ault, from the defendant, Page, on the sale of certain oil properties owned jointly by Ault and Page in the name of the Omega Oil Company, and which were sold by Page, together with other properties, to parties in New York. The record is clear that Page made the sale of the properties, together with other properties owned by him individually, for a lump sum of $800,000. It is undisputed that Page negotiated the sale; that he first represented to Ault that after deducting all expenses incurred by reason of the sale the share of the properties in the name of the Omega Oil Company, which belonged to Ault and Page, would amount to $266,000, being $133,000 for Ault and the same amount for Page. The sale of the properties to the parties in New York was made sometime in the year 1911. In August, 1913, the plaintiff and the defendant entered into a written agreement of settlement which was signed by both parties in this action. In this written agreement the defendant, Page, admitted an indebtedness of $30,000 to the plaintiff, Ault, and the note sued on herein was indorsed to the plaintiff as a part payment upon the settlement made. The plaintiff, Ault, contends that at the time the written agreement of settlement was signed a statement of their accounts was presented to Mr. Page for examination and

in that statement the Omega Oil Company's property that went into the sale made by the defendant, Page, to the New York parties was valued at $266,000; the one-half interest, which it is admitted by both parties the plaintiff, Ault, owned, was valued at $133,000; and the defendant, Page, at the time of signing the written contract of settlement, was familiar with all the facts with regard to the sale of the properties owned by the Omega Oil Company to the New York parties, for he had personally negotiated and consummated the sale himself about two years prior to entering into the contract of settlement; he knew to a certainty how much money was paid for all the properties sold to the New York parties; that a total sum of $800,000 had been paid and he had had two years to determine just how much money Ault was entitled to for his one-half interest in the Omega Oil Company's properties, that was included in this sale. The entire record is barren of any fact that even tends to show that Mr Page was ignorant, mistaken, deceived, or in any way imposed upon in entering into the contract of settlement. All the facts upon which the settlement was based were peculiarly within the knowledge of Mr. Page. He had had charge of the properties and had made the sale. He is a man of extensive business dealings, and the evidence of Mr. Page himself, found in the record, fails to disclose that he was in any way imposed upon or taken advantage of when the contract of settlement was executed, but the record of his testimony does disclose that he almost uniformly and successfully evaded each direct question touching the most important issue, and the one decisive of this action, as to whether or not he was misled or acted in ignorance of the real facts in executing the contract of settlement. On page 96 of the record we find the following questions propounded to Mr. Page:

"Q. Isn't it true that a form of contract together with this statement was handed to you, that you went over the matter, that either you or someone in your office altered the contract and put it in this form, that you finally signed it and then you and Mr Ault signed it after you had arranged it in this form? A. Now—Q. (Interrupting) Isn't that true? A. I couldn't say."

The question propounded Mr. Page was of vital importance in a controversy of this kind. He was asked to state upon his oath whether he himself had had the contract of settlement rewritten so as to conform to his wishes, and in his answer he refused to deny that that was a fact.

The plaintiff, Ault, in his testimony positively stated that he prepared a form of contract of settlement, together with a statement of the items of settlement, and personally presented the same to Mr. Page and they went over it item by item, and that Mr. Page took the contract of settlement and either prepared one or had it prepared, which was the contract finally signed by the parties, and Mr. Page does not deny that this state of facts is true, but in his testimony, as herein set out, evades the question. The amount agreed upon as to the value of the property of the Omega Oil Company which went into the sale and the amount of the indebtedness acknowledged by the defendat, Page, as contended for by the plaintiff, Ault, are sustained by the testimony of O. F. Tingley, associated with Mr. Page at the time the sale was negotiated by Mr. Page to the New York parties, and his testimony shows conclusively that Mr. Page was not ignorant of the facts as to the value placed on the properties of the Omega Oil Company at the time he executed the contract of settlement.

We conclude, upon an examination of this record, that upon the signing of the contract of settlement the account of Ault against Page, by reason of their years of business dealings, became a stated account; that the same was binding upon both parties, and could only be set aside or held for naught upon clear and convincing evidence of fraud or mistake. This rule of law is supported universally by the highest courts of the nation and the text-books. The rule will be found in 1 Corpus Juris, sec. 330, at page 705:

"An account stated, whether expressly or by implication, is prima facie evidence of the accuracy and correctness of the items thereof and of the liability of the party against whom the balance is found. And this is true, although the statement of the account expressly provides for the correction of errors and omissions; such a stipulation does not render the statement any the less a settled account and subject to all the rules applicable to a stated account. Accordingly, the burden of adducing evidence of fraud or mistake rests on the party who would avoid its binding force, and in the absence of such evidence the account stated is conclusive both at law and in equity."

The cases thereunder cited are so numerous that the writer of this opinion does not deem it necessary to cite additional authority in support of this rule.

In the case of Knox v. Pearson, 68 Pac. 613, the Supreme Court of Kansas had before it a case very similar to the case at bar, where two parties in business had entered into a contract of settlement and in a subsequent action the contract of settlement was attacked on a ground of fraud and mistake by one of the parties entering into the same. The court said:

"The answer filed by defendant below pleaded an account stated. A balance was struck, and the amount due Knox agreed on between the parties. Such settlement was conclusive, in the absence of fraud, mistake or error, and the burden to impeach it by clear and convincing testimony rested on the plaintiff below."

In the case of Dobbs et al. v. Campbell, the Court of Appeals of Kansas, 63 Pac. 289, held:

"A settlement of an account is conclusive between the parties until impeached for fraud, mistake, the omission of something, accident or undue advantage taken; and where such settlement is evidenced wholly by correspondence and there is no evidence to impeach it, its legal effect is a matter of law for the court, and it is error to submit the same to the jury, for which error a new trial was properly granted in this case."

In the case at bar the defendant, Page, does not anywhere in his testimony state that prior to entering into the written contract of settlement he intended to settle with Ault for his share of the property sold to the New York parties on a percentage basis, but his testimony as a whole shows that he intended to make a settlement upon a lump basis. He does not contend that the properties were valued by anybody with a view of settling with the interested parties on a percentage basis at the time of the sale, but he contents himself by saying that he intended to give the plaintiff a lump sum of $100,000, and it is clear from the record that he never signed the written agreement of settlement assuming that he was settling with Ault upon a percentage basis. It is clear from the record and from the testimony of the defendant that in entering into the written contract of settlement he did not assume to act upon the theory that the settlement was being made with regard to the Omega Oil Company's property on a percentage basis; therefore, the defendant could not be mistaken about something he never contemplated doing, but all his acts and declarations show that he intended to settle upon a lump sum basis.

An error of fact is ordinarily said to take place either when some fact which really exists is known, or some fact is supposed to exist which really does not exist; but where

an accounting is had between two parties and the facts are equally well known to both parties and they have equal information, and something of doubtful nature is agreed upon by the parties in good faith and the contract is free from fraud, the court will not disturb the same.

An examination of the authorities defining what constitutes a stated account discloses that they hold that a case may be brought within the principles of an estoppel, or of an obligatory agreement between the parties, and it appears that this distinction must be recognized. In modern business transactions as between a bank and its customers, a stated account is merely prima facie evidence of the correctness of the account, but a settlement and compromise of a doubtful controversy comes within the rule that where the agreement is reduced to writing the same constitutes an obligatory agreement; as in the case at bar, where there had been no particular agreement as to the value of the property owned by the Omega Oil Company, it was perfectly competent for the parties in their settlement to agree upon a value to be placed upon this property, and having agreed and reduced the agreement to writing, the same has all the force of a contract.

In Pickel v. St. L. Ch. of Com. Ass'n, 10 Mo. App. 194, the court said:

"When parties, having mutual matters of account between them, growing out of a contract, deliberately account together and state a balance, and the party who, on such accounting, is found indebted to the other, pays the debt or gives a written obligation for its payment, this settlement is so far conclusive between the parties that it cannot be reopened or gone into, either at law or in equity, except upon clear proof of fraud, or mistake, or of an express understanding that certain matters were left open for future adjustment."

In the case of Downing v. Murray, 113 Cal. 455, 45 Pac. 96, the plaintiff sought to open a stated account, and the court, in holding that the prima facie evidence of correctness had not been overcome, said:

"It abundantly appears that he did not make the settlement ignorantly. On the other hand, it appears that he knew, and for a long time before the settlement had known, what the other parties claimed, and substantially the extent and amounts of their claims; that he was a man of good business capacity; and that, looking over the whole field and considering the advantages and disadvantages of any particular line of action, he continued to accept the account as stated, settle in accordance with it, and take the money which he could not then have otherwise

received. Such an act cannot be set aside at the will of either party. It could be legally set aside only upon a showing of fraud, undue influence, etc., which showing was not made. There were averments of such things and of a conspiracy against him, but there was no evidence making a prima facie case of their existence."

For an extensive review of the authorities upon the conclusiveness of an account stated and settlement, see 11 A. L. R. page 586, under the head of Annotation.

In the case of Kiler v. Wohletz, 101 Pac. 474, the Supreme Court of Kansas said:

"It will be observed that Wohletz conceded that he purchased the rods, and that he was owing something for them. There was a substantial controversy between the parties and a compromise and settlement of that controversy. That being true, the court cannot go behind the settlement to determine whether the original claim of McCann was just, or whether Wohletz's version of the negotiations was right. If the parties met on equal terms, and the dispute was settled without fraud, the settlement concludes both of the parties."

Now, in the case at bar, it appears that the defendant, Page, met the plaintiff, Ault, in the settlement on more than equal terms, for the reason that the matters in controversy that were being settled were entirely familiar to Page in that he had had charge of the properties and negotiated and made the sale, the proceeds of which were being accounted for in the settlement.

In the case of Martin v. Heinze (Mont.) 77 Pac. 427, the Supreme Court of Montana said:

"An account stated is an agreement between the parties either expressly or implied that all the itmes are correct. The action is based upon the agreement, the consideration of which is the original account, and the agreement has the force of a contract."

In the case of Holmes v. Page, 23 Pac. 962, the Supreme Court of Oregon said:

"An account stated is an account which has been rendered by the creditor, and has been assented to by the debtor as correct, either expressly, or by implication of law from failure to object. The action is based upon an agreement between the parties founded upon an examination of the transaction embraced, and has all the force of a contract."

In the case at bar, there was no agreement as to the value of the property of the Omega Oil Company having been sold jointly with other property, and had it not been for the agreement of settlement fairly entered into between the parties having been made, no

question but that then it would have been competent to establish the value of this property on a percentage basis to the other property sold; but this agreement having been made in writing, and the evidence failing to disclose any fraud or mistake in entering into the contract, it was the duty of the trial court in such a situation to sustain the written contract of settlement.

The Supreme Court of the United States in the case of Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, said:

"It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written. But this is not the law."

The decisions are numerous holding that it is the policy of the law to encourage settlements, and after settlements have been made and fairly entered into and the parties have reduced their settlements to writing, if the courts would permit the parties to evade their contracts of settlement upon such testimony as is presented in this record, then the policy of the law would be brought to naught.

We conclude that the trial court erred in overruling the demurrer of the plaintiff to the defendant's testimony in this cause. The judgment of the trial court is reversed, and the cause is remanded, with directions to the trial court to sustain the motion of the plaintiff for a new trial and proceed with the cause in harmony with the views expressed in this opinion.

PITCHFORD, V. C. J., and JOHNSON, MILLER, ELTING, and NICHOLSON, JJ., concur.