In re Henry W. BLATNIK and Vivian R. Blatnik, d/b/a Ardmore Brick and Stone, Debtors.

Andrew R. TINDALE, Plaintiff,

v.

Henry W. BLATNIK, Defendant.

Bankruptcy No. 88–70602.
Adv. No. 88–7053.

United States Bankruptcy Court,
E.D. Oklahoma.

July 6, 1989.

Thomas B. Webb, McAlester, Okl., for plaintiff.

Jimmy Veith, Ardmore, Okl., for defendant.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On April 28, 1989, this Court conducted a Trial with regard to the above-referenced adversary proceeding. Appearances were made at the hearing by Thomas B. Webb on behalf of the Plaintiff and Jimmy Veith for the Defendant.

After review of the evidence, the applicable law and the arguments of counsel, this Court does hereby enter the following Findings of Fact and Conclusions of Law in this core proceeding:

## STATEMENT OF ISSUE

At issue in this case is whether the Defendant, by and through his fiduciary capacity as a partner to the Plaintiff, committed fraud or defalcation thereby rendering an obligation in the amount of $16,000 nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## FINDINGS OF FACT

1. On May 9, 1983, the Plaintiff and Defendant entered into a Partnership Agreement (Plaintiff's Exhibit # 1) establishing a business to be conducted as "Ard-more Brick and Stone." Said business was operated for the purpose of retail and wholesale sales of masonry supplies and equipment, operating from a yard located in the Ardmore, Oklahoma area.

2. The Defendant served as the Manager and operator of the business, as well as being a co-owner. The Plaintiff was admittedly a silent partner, participating very little in the day to day activities of the operation.

3. The partnership books and records on the business were kept by the Defendant at the brick yard. The Plaintiff periodically visited the yard, approximately every six months, but did not always review the books which were kept there. The Plaintiff's wife did in fact examine the books upon occasions when she visited the business. The records were later transferred to the Defendant's home when the brick yard was closed after a severe downturn in business made continued operation untenable.

4. On March 20, 1987, the Defendant obtained a loan in the amount of $25,000 from a third party, Roger Brawley, to be utilized in the business operation (Plaintiff's Exhibit # 3). Said loan was recorded in the partnership books.

5. The Partnership Agreement clearly states that "No partner shall, without the consent of the other partner, do any of the following: (a) borrow money in the firm name for firm purposes or utilize collateral owned by the partnership as security for such loans." There is a dispute in the evidence as to whether the Plaintiff was informed of the intention to borrow the funds; however, the partner clearly discovered the loan prior to the dissolution of the partnership.

6. During the operation of the business, the Defendant made several disbursements, either to himself for salary or to third persons for services rendered. The checks from said transactions and the ledger sheets from the partnership books and records were introduced into evidence demonstrating the party receiving payment and to show that each was fully documented in

the partnership books (Plaintiff's Exhibits #4, #31 and #32–#49, respectively). The Plaintiff learned of the salary disbursements to the Defendant prior to the dissolution of the partnership. The Partnership Agreement states: "No partner shall receive any salary for services rendered to the partnership, except as agreed by and between the parties." The evidence showed the parties periodically discussed Defendant's salary which was disclosed in the books and records. Thus, all salary disbursements are deemed to have been acquiesced to by the Plaintiff.

7. On September 17, 1987, the parties executed an "Agreement of Dissolution," (Plaintiff's Exhibit #2) effectively distributing remaining partnership assets and liabilities. Concerning said liabilities, the Agreement of Dissolution states that "Second Party (Defendant) does hereby assume all debts and liabilities of Ardmore Brick and Stone and does hereby release First Party (Plaintiff) from any and all obligations to pay any part thereof except for a certain mortgage on the above described property which First Party does hereby agree to pay; and if at anytime hereafter First Party is compelled to pay any part of any indebtednesses of Ardmore Brick and Stone, except for the mortgage mentioned hereunder, Second Party will hereby reimbursement and indemnify First Party therefor together with any and all costs and attorney fees incurred herein." Thus, the whole of the liabilities of this partnership upon dissolution rested on the Defendant for satisfaction.

8. At no time prior to the dissolution did the Plaintiff examine or actively seek to examine the partnership books and records. A request for the books was made by the Plaintiff; however, no evidence was introduced at the hearing that the Plaintiff was prohibited from viewing said records at anytime by the Defendant.

9. The Defendant filed a Petition seeking relief under Chapter 7 of the United States Bankruptcy Code on May 28, 1988. The Petition was filed on the Defendant, his wife and the d/b/a of Ardmore Brick and Stone.

10. Subsequently an action was brought by R. Brawley's representative against the Plaintiff individually for recovery on the partnership loan of $25,000. A settlement was reached whereby the Plaintiff agreed to pay $16,000 in full settlement of the lawsuit.

11. Plaintiff alleges that the Defendant breached his fiduciary duty in borrowing the money and making disbursements for personal use from the partnership account, thereby rendering the amount due and owing on the loan nondischargeable.

Defendant contends that Plaintiff had full knowledge of these activities and that the Agreement of Dissolution served as a full accord and satisfaction of all assets and liabilities of the partnership.

## CONCLUSIONS OF LAW

A. Plaintiff seeks a determination by this Court that the settlement amount of $16,000 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) which states:

A discharge under Section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;"

Every element of this Section which shall be enumerated hereinbelow requires strict proof by the Plaintiff through the evidence presented.

B. EXISTENCE OF A FIDUCIARY RELATIONSHIP—The initial requirement in order to hold a debt nondischargeable through this Section prior to a determination of whether a fraud or defalcation was perpetrated is a finding that the Defendant owed a fiduciary duty to the Plaintiff. *In re Taylor*, 58 B.R. 849, 852 (Bankr.E.D.Va.1986). Generally, the question of who is a fiduciary is to be determined under Federal law with consideration given to state law in the matter. *In re Black*, 787 F.2d 503, 505–6 (10th Cir.1986). Since in the instant case state partnership law is at issue, state law will be given great weight by this Court.

There is little doubt that under Oklahoma law "the relationship between partners or those about to become partners is fiduciary and imposes on them the obligation of utmost good faith and integrity in their dealings with one another with respect to partnership affairs." *Knapp v. First National Bank & Trust Company of Oklahoma City,* 154 F.2d 395 (10th Cir. 1946). Thus, Defendant does in fact owe a fiduciary obligation to the Plaintiff in partnership activities.

C. EXISTENCE OF FRAUD—The evidence clearly demonstrates that the Defendant in this case methodically recorded all disbursements in the partnership books contemporaneously with the writing of each check. The Plaintiff clearly had access to these books and records during the time in which these checks were written but failed to exercise his right to inspect the business operation. Since this is the case, it is impossible for this Court to find that the Defendant committed a fraud upon the Plaintiff while acting in his fiduciary capacity as a partner.

D. EXISTENCE OF DEFALCATION— Defalcation, as envisioned by 11 U.S.C. § 523(a)(4), is generally the "failure to account for money that has been entrusted to one, and is broader than embezzlement or misappropriation; it can be mere deficit resulting from debtor's misconduct, even though he derived no personal gain therefrom, or may not involve misconduct at all since negligence or ignorance may be 'defalcation.' " *In re Cowley,* 35 B.R. 526 (Bankr.D.Kan.1983). We can find no evidence that the Defendant failed to account for money entrusted to him. As mentioned hereinbefore, all transactions were amply and dutifully recorded in the partnership books and records which the Plaintiff failed to examine. All expenditures for which checks were written were arguably for the operation of the partnership business, at the discretion of the operating partner to whom the Plaintiff, as silent partner, had relinquished all control over the operation of the business. This is true save and except for the salary disbursements to the Defendant. Clearly, the evidence demon-

strates that the Plaintiff knew of the salary disbursements prior to the dissolution of the partnership but simply failed to force an accounting or otherwise demand a return of the salary received by the Defendant. As such, we must find that the Plaintiff acquiesced in the payment of salary in accordance with the terms of the Partnership Agreement, thus we likewise find no defalcation as to the salary receipts or any of the other disbursements made by the Defendant.

E. The question does arise as to whether the borrowing of the money by the Defendant was a breach of his fiduciary duty. A partnership agreement is an inter se document between parties to establish a business relationship. A dissolution agreement is likewise an inter se document terminating the relationship between the parties created by the partnership agreement. "As between partners, a partnership is created and exists only as the result of a mutual agreement to that effect. *Shackleton v. Commercial Lumber Company,* [182 Okl. 211] 77 P.2d 60 [ (1938) ]. Where a partnership has been created by mutual agreement of the partners, it must be dissolved by like agreement. 40 Am.Jur. § 235. As between partners, a settlement of their partnership affairs effected by mutual consent is conclusive upon them in the absence of fraud or mistake clearly established. *Ault v. Page,* [82 Okl. 168] 198 P. 991 [ (1921) ]." *Sutherland v. Groseclose,* 192 Okl. 58, 133 P.2d 888 (1943).

The Dissolution Agreement in this case serves as a full accord and satisfaction of all assets and liabilities between the partners. We can find no fraud or mistake which would obviate this determination. A conclusion can only be drawn that this was the intent of the parties upon the dissolution of the partnership. *LaFayette v. LaFayette,* 166 P. 169, 170–72 (Okla.1917).

Practically speaking, this Court recognizes that silent partners do in fact exist in the day to day operation of business partnerships. However, even a silent partner must be charged with the obligation to exhibit sufficient participation to protect his own business interest in the conducting,

and especially the wrapping up, of business affairs in a partnership. In this case, the Plaintiff was not prohibited from accessing the books and determining that the loan and the expenditures had in fact taken place. He chose instead to place all liability remaining in the partnership on the Defendant. This normally would have been satisfactory, save and except for the document being only inter se and for the intervention of the bankruptcy of the Defendant. We cannot protect the interests of a partner that he chooses not to protect himself. The weight and sufficiency of the evidence under similar circumstances was discussed in the case of *Craft v. Bates*, 372 P.2d 10 (Okla.1962). The Court likewise could not find fraudulent circumstances where the silent partner had access to the fully documented transactions but chose not to examine the books wherein said transactions were contained.

A dispute exists as to whether the Plaintiff was in fact informed of the $25,000 borrowed by the Defendant on behalf of the partnership. We find that whether he was informed or not, the Plaintiff did not consent to the loan; thus, the Defendant did in fact breach his fiduciary duty to the Plaintiff and breached the Partnership Agreement. Since this is the case, the Plaintiff is entitled to judgment. However, this finding is a far cry from also determining that the Defendant perpetrated a fraud or defalcation in the furtherance of his partnership duties; thus, the judgment debt rendered herein is deemed dischargeable.

F. EXISTENCE OF EMBEZZLEMENT OR LARCENY—No evidence of either embezzlement or larceny committed by the Defendant was presented to this Court and thus, these elements shall not be addressed further.

IT IS THEREFORE ORDERED that Judgment be rendered in favor of the Plaintiff, ANDREW R. TINDALE, against the Defendant, HENRY W. BLATNIK, in the amount of $16,000.

IT IS FURTHER ORDERED that the Plaintiff has wholly failed to sustain his burden under 11 U.S.C. § 523(a)(4) and thus the aforementioned Judgment amount is dischargeable in the Defendant's bankruptcy.